THOMAS MORRIS, Respondent, v. SALT LAKE CITY, Appellant, and S. BIRCH, Respondent.

No. 2000.   Decided March 17, 1909.   On Rehearing, April 22, 1909
(101 Pac. 373).

1. MUNICIPAL CORPORATIONS—GRADING STREETS—LIABILITY. Under the statutes a city may establish the grade of streets and may make the streets and sidewalks conform thereto, subject only

to an action for damages to abutting property in specified cases.[1]  (Page 483.)

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—JUDICIAL CONTROL. The courts may not control a city in the exercise of its right to make public improvements, and will not ordinarily review the acts of city authorities in their determination of what the improvement shall be and how its plans shall be executed, unless the plans were conceived in bad faith, or are oppressive or clearly unreasonable.  (Page 484.)

3. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY. While an abutting owner may plant trees in a street in front of his premises, and may acquire an interest in them, which the law will protect, as against a trespasser, yet such trees are subject to the rights of the public, and where in making the street conform to the established grade or in constructing a sidewalk, it becomes necessary to remove the trees or injure them, the owner has no relief.  (Page 484.)

4. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY. A city is not liable for any defect in planning a public improvement, but it may be liable for a defective or negligent execution of such plans.  (Page 486.)

5. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY. A city adopted in good faith reasonable plans for a sidewalk in a street. The execution of the work was not inherently dangerous, and injury would not necessarily result from laying the sidewalk. The city employed an independent contractor to do the work. Held, that the city was not liable for the negligent acts of the contractor.  (Page 485.)

6. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY. A contract for the construction of a sidewalk required the independent contractor to remove all trees when ordered to do so by the city engineer. No orders were given for the removal of trees growing in the street in front of the dwelling of the abutting owner. The evidence was conflicting whether it was necessary to remove the roots of the trees in laying the sidewalk. The contractor cut the roots of the trees and left them practically without support. Held that, if it was necessary to remove the roots, the abutting owner could not complain.  (Page 486.)

7. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—DAMAGES—PERSONS LIABLE. If the contractor negligently cut the roots, the contractor was alone liable to the abutting owner.  (Page 486.)

[1] Kimball v. S. L. City, 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483; Hempstead v. S. L. City, 32 Utah 261, 90 Pac. 397.

8. MUNICIPAL CORPORATIONS—LIABILITY—PRIMARY LIABILITY. It is the primary duty of a city to exercise reasonable care to maintain its streets in a reasonably safe condition, and to guard against injury to persons and property by making reasonably safe any dangerous objects in the street, and this duty is constant and continuing and nondelegable. (Page 487.)

9. MUNICIPAL CORPORATIONS—LIABILITY—PRIMARY LIABILITY. A city employed .an independent contractor to lay a sidewalk. The contractor cut the roots of trees standing in the street and left them without support. Five or six days thereafter, the trees were blown down and against the dwelling of the abutting owner causing damages. *Held*, that the city was liable for the damages to the dwelling, whether the independent contractor negligently cut the roots, or necessarily did so in the construction of the walk. (Page 489.)

10. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—WAIVER. An assignment of error not argued in appellant's brief is treated as abandoned. (Page 489.)

11. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY OF CONTRACTOR. A contractor employed to construct a sidewalk, who cut the roots of trees standing in the public street, and thereby deprived the trees of their support, and who did not exercise any care to prevent the trees from falling and injuring the property of individuals, is liable for injuries sustained in consequence of the trees blowing down and against the dwelling of the abutting owner. (Page 489.)

12. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY—CONTRACTS. While a city, ordering a street improvement, cannot avoid liability as to individuals with respect to the primary duties imposed on it by law, it may by contract require the contractor to indemnify it as against the claims of individuals, resulting from breach of such primary duties. (Page 490.)

13. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—INJURIES—ACTIONS—PARTIES. Where a contractor cut the roots of trees standing in a street and left them without support, and they fell against the building of an abutting owner, injuring the same, the abutting owner could sue the city and the contractor jointly, and could pursue them both or either of them so long as his claim for damages remained unsatisfied. (Page 490.)

14. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIABILITY. Where a contractor for a sidewalk unnecessarily cut the roots of trees standing in the sidewalk, and thereby unnecessarily interfered with the abutting owner, the latter could recover from the contractor the damages for the wrongful destruction of the trees. (Page 490.)

15. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ACTIONS—COMPLAINT. A complaint, in an action against a city and an independent contractor for a sidewalk, which alleges that in constructing the walk the roots of plaintiff's trees standing in the street in front of his premises were unnecessarily cut, whereby the trees were left without support, and that the trees were negligently permitted to stand without any support, in consequence of which they fell against the dwelling damaging the same, etc., states a cause of action as against a general demurrer. (Page 491.)

16. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—NEGLIGENCE—LIABILITY. A contractor for a sidewalk cut the roots of the trees standing in the public street in front of the dwelling of the abutting owner. The trees were left without support, and five or six days thereafter they blew down against the dwelling damaging the same. Held to justify a finding that the city had constructive notice of the dangerous condition of the trees rendering it liable for the damages sustained. (Page 491.)

17. APPEAL AND ERROR—PARTY ENTITLED TO ALLEGE ERROR—DIRECTION OF VERDICT—MOTIONS. The rule requiring the giving of some reason either in the motion for a directed verdict, or in some other way, when a motion for a directed verdict is granted, is for the benefit of the party against whom the motion is directed, and another party cannot complain because of the absence of any reason for a directed verdict. (Page 492.)

18. APPEAL AND ERROR—HARMLESS ERROR. Under Comp. Laws 1907, sections 3008, 3285, requiring the court to disregard any defect in the proceedings not affecting the substantial rights of the parties, etc., errors not affecting the substantial rights of the defeated party must be disregarded on appeal. (Page 495.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action to recover damages for injury to property by Thomas Morris against Salt Lake City and S. Birch. From a judgment for plaintiff against Salt Lake City it appeals, and from a judgment for defendant S. Birch plaintiff appeals.

Judgment against defendant Salt Lake City AFFIRMED.

Judgment in favor of defendant Birch REVERSED AND REMANDED.

*H. J. Dinniny* and *P. J. Daly* for appellant, Salt Lake City.

*M. E. Wilson* for respondent *Morris.*

*Stephens & Smith* for respondent *Birch.*

APPELLANT, SALT LAKE CITY'S AUTHORITIES.

There can be no question but that the city has absolute control over the streets of the city, and that it could have removed the trees entirely without notice to the plaintiff, and such action would have made it liable only in case of abuse of its authority, and when the city determined to make this improvement in the way it did, its conclusion was final, and not subject to review by the courts except for abuse of its power. (Smith on Municipal Corp., vol. 2, sec. 1311; *Case v. Oshkosh,* 51 N. W. 560 [Wis.]; *Murray v. Norfolk,* 21 N. E. 757 [Mass.]; *Mt. Carmel v. Shaw,* 39 N. E. 587 [Ill.]; *Tate v. Greensboro,* 24 L. R. A. 671 [N. C.].) A person is not responsible for the acts of an independent contractor to whom he has let a particular job of work, when he reserves to himself no control over the work except the right to see that it conforms to a particular standard. In such case the doctrine of *respondeat superior* does not apply. (5 Thompson on Neg., 5803, 5804; Williams on Mun. Liab., sec. 29; 3 Abbott Mun. Corp., sec. 975; *Water Supply Co. v. White,* 124 Ind. 376, 24 N. E. 747; *Boherer v. Harness Co.,* 19 Ind. App. 489, 49 N. E. 300; *Ryan v. Cuner,* 64 Ind. 345; *Zimmerman v. Barer,* 64 Ind. App. 607, 39 N. E. 299; *Blake v. Ferriss,* 5 N. Y. 48; *Pierpont v. Fowlers,* 72 N. Y. 211; *Clark v. Fry,* 8 Ohio 358; *Card v. Hartman,* 29 N. Y. 591; *Storrs v. Utica,* 17 N. Y. 104; *Cannon v. Railway,* 4 Ohio 399; *Cosgrove v. Morgan,* 5 Duer 495; *Water Co. v. Wan,* 16 Wall. 566; *Mayor v. Frieze,* 3 Hill 616; *Dygert v. Schenck,* 23 Mich. 446; *Vanderpool v. Hansen,* 28 Barb. 196; *Matheny v. Wolffs,* 2 Div. 137; *Milford v. Holbrook,* 9 Allen 17; *Charlock v. Freel,* 125 N. Y. 418; *Massey v. Coates,* 39 So. 142 [Ala.]; *Willje v. Silverman,* 102 N. Y. S. 783;

*Boswell v. Laird,* 8 Cal. 469; *Railway v. Kimberly,* 87 Ga. 161; *Kahon v. Brock,* 144 Mass. 517; *Gorham v. Gross,* 125 Mass. 232; *McCafferty v. Railway,* 61 N. Y. 178; *Edwinson v. Railway,* 111 Pa. 316.)

APPELLANT, AND RESPONDENT, MORRIS' AUTHORITIES.

Cutting and destroying the roots and support of said shade trees, and permitting the same to remain standing in front of the plaintiff's property, unsupported in any manner whatsoever, or at all, without taking any precaution to prevent the same from falling or being blown over upon the plaintiff's residence, and in a condition where the same were liable to be blown down by a not infrequent gale and so that if the same were blown down they would fall upon and injure the plaintiff's property, constituted the creation and maintenance of a private nuisance, and the defendants occupied the position of joint tortfeasors, and the plaintiff may recover against either or both of them in damages. (*Cork v. Blossom,* 162 Mas. 330, 26 L. R. A. 256; *Johnson v. Electric Co.* [La.], 29 So. 223; 1 Thompson on Negligence, sec. 685; 5 Thompson on Negligence, sec. 5803, p. 289; *Carman v. Railway,* 4 Ohio St. 399; *Kollock v. Madison,* 84 Wis. 458, 54 N. W. 725.) The defendant Birch and the defendant city jointly created the condition complained of, and were in joint control thereof at the time of the injury complained of, consequently the contract existing between them, or the directions given by the city to the contractor Birch, or the fact that Birch received no directions from said defendant city to remove said trees, are as between this plaintiff and said defendant Birch entirely irrelevant and immaterial, and in no respect a defense to the action against said Birch. (1 Thompson on Negligence, secs. 685, 1159; Mechem on Agency, sec. 572; *Ellis v. McNaughton,* 76 Mich. 237; *Baird v. Shipman,* 7 L. R. A. 128, 132 Ill. 16; *Mayer v. Building Co.,* 28 L. R. A. 433, note.) Neither Birch nor the city had any right to remove the trees until such action was required by public necessity; and as preliminary to their removal where it was required

by public necessity, the owner should have been given notice of such fact and an opportunity to remove them himself, otherwise the municipality and contractor are liable as trespassers. (*Stretch v. Cassopolis* [Mich.], 51 L. R. A. 345; *Miller v. Railway*, 125 Mich. 172; 51 L. R. A. 957; *Clark v. Dasso*, 34 Mich. 86.)

. Whether removal of the trees was required by public necessity could not be conclusively determined by the municipality, that question must be submitted to a jury under the guidance of the court. The determination of it by the officers of a city can have no effect whatever upon its ultimate disposition. "It is for the courts." (*Avis v. Vineland*, 56 N. J. Law 474, 23 L. R. A. 685; See also *Frostburg v. Wineland*, 98 Md. 239; 1 A. and E. Ann. Cases, 783. [See note]. Whether the fee of the land, whereon the street is located, is in the city or in the abutting owner, is of no importance. (*City of Paola v. Wench* [Kan.], 98 Pac. 775; *Lovejoy v. Campbell*, 16 S. Dak. 231; sec. 3508 Revised Statutes of Utah; 2 Dillon Mun. Corp., 656-664; 2 Cooley on Torts, 656.)

FRICK, J.

This is an action for damages, which, it is alleged, were caused to plaintiff's property through the alleged unnecessary and negligent cutting of the roots of his trees standing and growing in a public street in front of his dwelling. The alleged injury and damages arose primarily out of the laying of a cement or concrete sidewalk by the defendant city in front of plaintiff's property. The defendant Birch was made a party to the action as a contractor doing the work for the city under a contract with it.

The city disclaimed liability upon various grounds, one of which is that the defendant Birch was an independent contractor. Without now pausing to decide whether, under the stipulations of the contract in question, Birch was or was not an independent contractor, we shall, in so far as the city is concerned, assume, for the purposes of this decision, that he was such, and give the city whatever benefit it may be entitled to by reason of that relation.

The plaintiff alleged that in constructing the sidewalk in question the roots of his trees were unnecessarily cut and destroyed, by reason whereof the trees were left without support, and that the trees were wrongfully and negligently permitted to stand without any support, in consequence of which eight of plaintiff's trees were, by the wind, blown over onto his dwelling house and fence, causing great injury and damage thereto. It was made to appear at the trial: That the trees were a species of Canadian poplar; that they had been planted some sixteen or eighteen years in front of plaintiff's dwelling in the street and were standing and growing from nineteen to twenty-eight inches from the outer edge of the proposed sidewalk as completed; that the trees were from sixty to seventy feet in height with interlacing branches; that in the street and between the outer margin of the walk and the street proper there was an irrigating ditch, upon the bank of which the trees stood; that the roots of the trees grew mostly in the opposite direction from this ditch, or toward the house, and were near the surface and crossed the strip of ground where the sidewalk was placed; that in preparing the ground for laying the sidewalk, which was six feet in width and four inches thick, and was practically laid on the surface of the ground to conform to the grade established by the city, the roots of the trees were cut by the contractor. Plaintiff's testimony was to the effect that some of the roots that were cut were from ten to eleven inches thick, and that about all were cut which crossed the space where the sidewalk was laid, and that the roots were cut to the depth of from twelve to fourteen inches below the natural surface of the soil. The evidence on behalf of plaintiff further tended to show: That, after the roots had been cut as aforesaid for from four days to a week, a considerable wind arose one morning, the force of which caused all of the trees to fall, and that four or five of them fell onto plaintiff's dwelling, and the rest fell into his dooryard; that the trees which fell on the house broke and damaged the roof, knocked down two chimneys, and injured the walls and plastering of the house, while the rest broke the

35 Utah—31

picket fence in front of the house and caused other damage about the premises. Plaintiff and another witness also testified that after the trees were blown over they examined the roots and found that about all of them of any considerable size leading toward the house, and which gave support to the trees, had been cut. That there were few, if any, roots leading in the opposite direction, by reason of the irrigating ditch, which was considerably lower than where the trees stood. There was some evidence also tending to show who was engaged in laying the sidewalk, that quite a number were engaged, and that a man representing the city was present some of the time (presumably an inspector), and that some members of the city council visited the premises shortly after the trees had been blown down. After proving the condition of the house and fence before and after the trees fell, and the extent of the injury and damage, but without connecting the city with it, except as stated above, the plaintiff rested. Both defendants moved the court for a nonsuit, which motions were overruled.

All the parties to the action requested that the jury be permitted to view the premises, which was done, after which the defendants introduced further evidence, which is to the effect: That the defendant Birch constructed the sidewalk under a special contract, by the terms of which he was to furnish all the help, material, and appliances necessary to prepare the ground, and to lay the sidewalk and to construct the same in accordance with certain specifications prepared by the city engineer and according to the grade established by the city; that the contractor was to remove all trees designated by the city engineer and was to be paid the contract price for such work when ordered; that the sidewalk in question was laid in accordance with the established grade; that in front of plaintiff's premises the walk was laid upon a slight fill; that the roots of the trees in question spread out from the trees across the space where the sidewalk had to be laid; that they were about five inches thick and protruded above the surface of the soil to some extent; that the roots so pro-

truding were cut off; that it was necessary to cut them to properly construct the sidewalk; that it is impractical and unsafe to lay a concrete walk on live roots for the reason that the roots in growing will heave or lift up the walk and cause the cement to break and become uneven or unsafe for travel; that no roots were cut below a depth of five or six inches; and that it was necessary to cut them. Upon substantially the foregoing evidence the court took the case from the jury and dismissed it as against defendant Birch, but submitted it to the jury upon certain instructions as against the city. The jury returned a verdict in favor of plaintiff and against the city for $250, upon which the court entered judgment. The city appeals from the judgment against it, and the plaintiff appeals from the order or judgment of the court dismissing the case as against the defendant Birch.

We shall consider the city's appeal first. The first error assigned is that the court erred in overruling the motion for a nonsuit interposed by the city. Counsel for the city contend that when plaintiff rested there was no evidence connecting the city with the acts complained of, and no evidence upon which the city could be held liable under the law for injuries arising under the circumstances detailed by plaintiff's witnesses. Without pausing at this time to give special reasons for our conclusions, we are of the opinion that, in view of all the evidence and inferences that can properly be deduced therefrom, and in view of the pleadings and the reasons which will be made to appear hereafter, the court committed no error in overruling the motion. This assignment must therefore be overruled.

Upon the merits of the appeal, it is insisted by counsel for the city: That it had the exclusive right to establish street and sidewalk grades; that under the statutes of this State full power and authority over streets is conferred upon cities, with the right to grade, gutter, and improve them as may seem proper to the city authorities; that the sidewalk in question was planned and laid strictly in accordance with, and pursuant to, the powers conferred by the statute; and that, while an abutting lot owner

may plant trees in the street in front of his premises, such trees are nevertheless subject to the control of the city, and if, in the exercise of its lawful powers, when reasonably exercised, it becomes necessary to remove or destroy any trees growing in the street, the city may remove or destroy them, and any injury or damage resulting, if such removal is done with reasonable care, must be borne by the lot owner and not the city. It is undoubtedly true that a city, under the statutes of this State, may establish grades and may make the streets and sidewalks conform thereto, subject only to an action for damages on the grounds stated in *Kimball v. Salt Lake City,* 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483; and *Hempstead v. Salt Lake City,* 32 Utah 261, 90 Pac. 397. The courts may not control the city in the exercise of its rights in making public improvements, nor can the courts ordinarily review the actions of the city authorities in their determination of what the improvement shall be and how its plans shall be executed. Nor is the city liable for any defect in planning a public improvement, but it may be so for a defective or negligent execution of its plans. 5 Thompson's Comm. Neg. section 5794. While an abutting lot owner may, therefore, plant trees in a street in front of his premises, and may acquire an interest in them which the law will protect as against any one who, without lawful authority, injures them or destroys them, yet, notwithstanding this, the lot owner plants the trees in the street subject to the rights of the public. If, in making a certain street conform to the established grade, it becomes necessary to remove the trees, or if they become injured in doing the work, if done with reasonable care, the lot owner has no legal cause for complaint. The same rule applies in the laying of sidewalks. If it becomes necessary, in order to construct a sidewalk properly, to remove trees, or the branches thereof, or even the roots, all this may be done, if done with reasonable care and not oppressively or with bad motives. The law upon this subject is well stated by Mr. Justice Weaver of the Supreme Court of Iowa in the following language:

"It is not an easy undertaking to lay down any hard and fast rule as to the exact circumstances or combination of circumstances under which the court will restrain a city from the execution of a proposed plan or public improvement. The state having intrusted such work to the municipal authorities, the court cannot impose upon them its own ideas of utility, taste, or beauty. It is often the case that persons in municipal authority find beauty in dead uniformity, and bend all their energies to reproduce in their streets the monotony of a checkerboard, squaring the angles, plowing down the slopes, filling up the valleys, leaving a portion of the population perched on inaccessible heights and others plunged in yawning depths; and if in doing this work the letter of the law has been fairly observed there is no relief for the property owner who thinks himself injured, except such as he may derive from expressing his opinion upon the subject. It remains true, however, that the lot owner has a property interest in the shade trees standing in the street in front of his lot, and, if they are so located as not to be an obstruction to the proper use of the roadway or sidewalk, the city may not arbitrarily destroy or remove them. If, however, the city duly adopts a plan for the improvement of the street by grading or otherwise, and the execution of such plan necessarily requires the destruction of the trees, their removal in the prosecution of such work affords no cause of action to the lot owner. To the person who has planted trees, cared for them, protected them against violence, and has seen them grow and develop into things of beauty, until he comes to regard them with genuine affection, this conclusion is, no doubt, an unwelcome one; but the court must administer the law as it finds it, and the rule as we have stated it is well settled." (*Kemp v. City Des Moines,* 125 Ia. 643.)

The following are also well-considered cases upon the question of removing or injuring trees in constructing sidewalks, all of which directly support the doctrine as laid down by the Supreme Court of Iowa: *Vanderhurst v. Tholcke,* 113 Cal. 147, 45 Pac. 266, 35 L. R. A. 267; *City of Atlanta v. Holliday,* 96 Ga. 551, 23 S. E. 509; *Chase v. City of Oshkosh,* 81 Wis. 313, 51 N. W. 560, 15 L. R. A. 553, 29 Am. St. Rep. 898; *Tate v. Greensboro,* 114 N. C. 392, 19 S. E. 767, 24 L. R. A. 671; *Baker v. Town of Normal,* 81 Ill. 108; *Wilson v. Simmons,* 89 Me. 242, 36 Atl. 380; *Frostburg v. Wineland,* 98 Md. 239, 56 Atl. 811; 1 Am. and Eng. Ann. Cas. 783.

As a general statement therefore it may be said that the law authorizes the city authorities to exercise their own judgment in establishing street or sidewalk grades and in

formulating plans for improvements of that or any other public character. It is also clear that the execution of the plans adopted may not be arrested or the plans reviewed by either a court or jury, unless it is made to appear that they were conceived in bad faith, or that they are oppressive or clearly unreasonable, or are arbitrary, or capricious, or that their execution would inflict great and needless injury; but the city is liable for damages resulting from the negligent execution of its plans, regardless of whether the plans are proper or fall within the exceptions indicated above. There is no evidence in this record which brings the case within any of the exceptions; nor is there any evidence that the execution of the work was inherently dangerous; nor that, in laying the sidewalk, injury would necessarily result; nor that it would necessarily involve dangers to others, which dangers it was the primary duty of the city to guard against. Under such circumstances the city would not be liable for the negligent acts of Mr. Birch, who, for the purpose of this case, we have already held was an independent contractor, except as herein stated. This doctrine is well illustrated and applied in the following cases: *Uppington v. City of New York,* 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; *Blumb v. City of Kansas,* 84 Mo. 112, 54 Am. Rep. 87; *City of Anderson v. Fleming,* 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119. The rule is well and clearly stated by the following textwriters, namely: Elliott on Roads and Streets (2 Ed.), section 633; 2 Dillon on Mun. Corps. (4 Ed.), sections 1027-1030; 5 Thompson's Comm. Neg. sections 5803, 5804.

Plaintiff, however, insists that the cutting of the roots was unnecessary, and if the city, in laying the sidewalk, directed or authorized the unnecessary cutting of the roots, it is liable. Assuming, for the present, that the cutting of the roots was unnecessary, we can find nothing in the evidence upon which a finding could be based that the city neither directed or authorized Mr. Birch to unnecessarily or needlessly cut the roots of plaintiff's trees, or to cut them at all. The contract provided that Mr. Birch should remove all trees when ordered to do so by the city engineer, and for doing so the con-

tract provided payment. There is no claim made that any orders were given by any city official with regard to the trees in question. If, in laying the sidewalk it was necessary and proper to remove the roots so as to prevent them from heaving, lifting, or breaking the cement, as testified to by the witnesses for the city—and which testimony is not disputed by plaintiff—then he has no legal cause for complaint. If, upon the other hand, Mr. Birch unnecessarily or negligently cut the roots, he, and not the city, in view of what we have already said, would have to assume the consequences of his wrongful or negligent acts. But we think that the city is liable upon a different ground, and for another reason. According to the testimony of plaintiff's witnesses, the roots were cut and the trees were left in that condition from four days to a week before they fell. It is also made to appear that the inspector for the city was present during some portion of the time at least after the roots were cut and while the work of preparing for and laying the sidewalk was in progress, and that he knew that at least some of the roots had been cut. If we should assume therefore that the knowledge of the inspector in this regard was not to be imputed to the city (a question not decided), yet, in view that by cutting the roots the trees were deprived of their support and remained in that condition for the period of time stated, the jury were authorized to find that the city had constructive notice of the dangerous condition of the trees. In this connection it must not be overlooked that it was the primary duty of the city to exercise reasonable care to maintain the streets in a reasonably safe condition and to guard against injury to persons and property by removing or making reasonably safe any dangerous objects in the streets. This duty was constant, continuing, and nondelegable. If a mere stranger therefore had erected a large pole sixty or seventy feet in height in the margin of the street, and had left it without supports, or had removed the supports from one already standing in the street, and had thus made it a menace to others, it would have been the duty of the city to exercise reasonable diligence to discover it, and to exercise ordinary

care to remove it or to make it reasonably safe. True, in such a case, the stays or braces supporting the pole would have been visible, and their removal would have caused any reasonable person to apprehend that the pole, when deprived of its supports, might, and in all probability would, fall, and might thus injure some one; but all men know that the natural support of trees is found in their roots, and that, if those are removed or severed from the trees, they are left without their natural support, and hence, if left in that condition, may fall or be blown over by the wind at any time. If the natural support of plaintiff's trees were thus removed, whether this was done by Mr. Birch negligently, or even if necessarily done for the purpose of constructing a proper sidewalk, both he and the city would be liable for any damage that was caused by the falling of the trees which could have been prevented by the exercise of ordinary care. Mr. Birch would be liable because he caused the trees to become a menace and a danger and for permitting them to remain in that condition, and the city is liable for failing to discharge its duty in not removing the trees from a public street when deprived of their support, and in permitting them to remain in that condition so that they might be blown over at any time by an ordinary wind. Mr. Birch, therefore, caused the dangerous condition of the trees and both he and the city negligently permitted the danger to remain, in consequence of which the injury to plaintiff's house and property resulted. The doctrine that we invoke is generally applied where excavations or other obstacles are placed in the streets by a contractor in making some improvement in a street, and where such excavations or obstacles are left unprotected and unguarded in consequence of which an injury results to a traveler or one lawfully using the street. We can see no distinction, however, between the principle which is involved in such a case and the one at bar. In either case the city and the contractor are not held liable because of doing the work, but because in doing it a danger is created which is negligently permitted to exist by reason of which injuries and damages result to someone.

In so far as the damage for which plaintiff was permitted to recover is concerned, it is immaterial whether the roots of the trees were necessarily or unnecessarily cut, since the recovery was limited to the injury to the dwelling. The fact remains that they were cut, and that the jury no doubt found that the trees with the roots cut were left in a dangerous condition, and that the trees were blown over onto plaintiff's house by reason thereof. Some claim is made by both Mr. Birch and the city that the wind which caused the trees to fall was unusual and extraordinary. There is ample evidence, however, that the wind was only an ordinary wind and not unusual in this vicinity, and the jury were justified in so finding.

While the city has assigned errors relating to instructions, none of these errors were argued in the brief, and hence we must treat them as abandoned. The other assignments have, we think, all been answered by what has been said, except the one relating to the insufficiency of the evidence to sustain the verdict with respect to the amount of damages allowed. We are of the opinion, however, that, when all the evidence is considered, the amount allowed is not excessive and is supported by the evidence. We remark, however that while the instructions did not in all things harmonize with the law as we have herein stated it, the court, in view of all the facts, nevertheless did not so far depart from the law applicable to the facts as would authorize a reversal of the judgment against the city upon this ground. We are further impressed that, in view of the whole record, no prejudicial error was committed against the city in the court's rulings for which the judgment against it can be reversed.

Upon plaintiff's appeal, in so far at least as it affects the ruling of the court in dismissing the motion against Mr. Birch, the situation is different. The city likewise complains of this ruling, and has assigned it as error, and now joins with the plaintiff in urging that the ruling is erroneous. From what has already been said, it is manifest that Mr. Birch is liable in this case if the city is to be held so. In this regard we need not repeat what has

already been said concerning the ground upon which the liability of Mr. Birch rests. Even if it had been necessary for him to cut the roots of the trees in order to comply with his contract he could not cut them, and thus deprive the trees of their support and make them a menace and a danger, without exercising ordinary care to prevent them from falling and from injuring the property of others. This duty the law imposed upon him, and he cannot shield himself by the simple statement that what he did was done by virtue of a contract with the city, and hence the city, and not he, must bear the consequences. If in the execution of the contract a present danger was created, it was his duty to avert injury to others where this could be done by the exercise of ordinary care. Moreover, as between him and the city, it was perfectly proper for them to contract with respect to such dangers. While the city could not avoid liability as to others with respect to primary duties imposed upon it by law, it nevertheless could, by contract, require Mr. Birch to indemnify it as against all such claims. The city therefore is interested in having Mr. Birch's liability determined in the same action in which its own liability is established. Upon the other hand, the plaintiff, in view of all the facts in this case, had the right to sue both the city and Birch jointly, and he has the right, so long as his claim remains unsatisfied, to pursue both or either of them. Moreover, in so far as Birch is concerned, the plaintiff may show, if he can, that the roots of the trees were unnecessarily and wrongfully interfered with by Mr. Birch, and, if this be so, the plaintiff may, as against Birch, not be limited to the damage merely that was caused by the falling of the trees, but may recover damages, if any, by reason of the wrongful destruction of the trees.

From what has been said, it follows that the judgment against the city is affirmed, that the order or judgment dismissing the case against Birch is reversed, and the case as against him is remanded to the district court, with directions to grant a new trial as to him and proceed with the case in accordance with the views herein expressed;

plaintiff to recover his costs as against the city to the extent of its appeal and against Birch to the extent of the appeal against him.

It is so ordered.

STRAUP, C. J., and McCARTY, J., concur.

·ON REHEARING.

FRICK, J.

Counsel for the city have filed an application for a rehearing, in which it is strenuously insisted that we have erred in arriving at the conclusion reached in this case in so far as the city is concerned. While the petition for the rehearing conforms to neither the rules of this court, nor the statute which authorizes such a petition to be filed, we have nevertheless given it due consideration.

The first ground to be noticed is that the complaint is insufficient to sustain the judgment of this court, in that the complaint does not directly allege that the city had notice of the dangerous condition of the trees. If a specific objection to the complaint had been interposed in proper season upon the ground there might be some merit to the objection now urged. The only objection, however, was by a general demurrer, and as against this the complaint was good, as sufficiently appears from the allegations we have set forth in the statement of facts. No further comment is necessary.

It is further insisted that there is no evidence upon which a finding could be based that the city had either actual or constructive notice of the dangerous condition of the trees. In their argument for a rehearing counsel say: "So far as there is any evidence in this case, the roots may have been cut the afternoon before the trees blew down." On page 81 of the bill of exceptions, which was before us when we wrote the foregoing opinion, it appears that Mr. Backman, a witness for the plaintiff, in answer to the question when the cutting of the roots took place, with reference to the 3d day of October (that being the day on which the trees were blown down), testified: "That was

immediately prior, . . . I should say five or six days prior to the wind." Again, on page 89, on cross-examination, the witness was asked whether he (the witness) saw "these roots cut before the sidewalk was laid." He answered: "Yes, sir." Then he was further asked whether the grading for the sidewalk was completed before the walk was laid. He answered that the grading was completed possibly a week, but at least three or four days, before the walk was laid. By other evidence it is shown that the roots were cut before the grading was done. This is only a part of the evidence on this subject. Waiving all question whether the city can turn its contractor loose upon the public streets and remain entirely oblivious to what he may be doing, we still think there was ample direct evidence from which constructive notice to the city of the dangerous condition of the trees could be inferred.

The further question is presented, which it is claimed we entirely omitted to decide, namely: That the district court erred in not specifying any reason for which it withdrew the case from the jury as to the defendant Birch. We reversed the judgment in favor of Birch, and this ought to end the controversy so far as this particular error is concerned; but in what way is the defendant city interested in this particular question? So far as the city is concerned, a decision of this question can be of no other effect than to satisfy the curiosity of its counsel. The rule of requiring some reason to be given either in the motion itself, or in some other way, when a motion for a nonsuit or for a directed verdict is granted, is for the benefit of the party against whom the motion is directed. The rule is for the purpose of giving the plaintiff in the action an opportunity to supply the defect, if he can, which it is claimed prevents a submission of the case to the jury, or the court, as the case may be, upon the facts. We are unwilling to assume that counsel for the city, which was sued as a joint tort-feasor with the defendant Birch, were anxious or even willing to supply any defect that might have appeared in plaintiff's case which would fasten liability either upon the one or the other of the defendants. Indeed, the first motion for non-

suit shows to have been made by counsel for the city, and that this motion was a joint one, including both the city and Mr. Birch. The directed verdict was, however, in favor of Birch only. True, the plaintiff, Morris, might have complained of our silence upon this point, but he seems perfectly satisfied with the reversal, and is so, no doubt, for the reason that a reversal of the judgment against Birch also upon this ground would still be no more than a reversal. But under what rule of law or practice can either the city or Birch be heard to complain of an act of the court which they invoked? The real reason why we did not discuss the point, however, was that the motions for a nonsuit, when made, were sufficiently specific. The irregularity consisted in overruling the motion in favor of Birch at the time it was made, and in effect granting it when the evidence was all in. This phase of the case was not alluded to by either counsel, and in the absence of any argument upon it we did not care to discuss it; nor are we inclined to do so now.

The last ground for the rehearing to be noticed is one to which we devoted much attention and reflection before arriving at the conclusion in the former opinion. The reason stated by counsel for the city is substantially this: That the case was neither tried nor submitted upon the theory on which the decision against the city is based. It is now strenuously urged that a rehearing should be granted upon this ground alone. We carefully and thoroughly examined the whole record and the instructions given by the court before rendering our former decision. It is true that counsel for the city excepted to certain instructions given by the court, and assigned the giving of them as error; but one will look in vain in their printed brief for any comment on these assignments. Nothing is said in the brief with respect to any instructions either given or refused. Moreover, the exceptions to the instruction given were general merely. The exceptions were directed to the whole instruction. Upon inspection we do not think that the instructions given were properly assailable in this way. Hence we did not then, and, for the same reason, shall not now, discuss these assignments. But, apart from this, we think the case was pre-

sented and argued, by plaintiff's counsel at least, upon the theory upon which it is decided against the city. On the oral argument it was discussed, and this is likewise the case in the printed brief, as the following excerpt from page 29 of plaintiff's brief shows. Counsel there said: "The negligent act of Birch in cutting and destroying the roots of these trees, and in negligently leaving said trees without any support, was not collateral to the execution of the work required by the contract. The city and Birch were each bound to use reasonable care to prevent doing injury to the property of the plaintiff. When they undertook to remove the support of these shade trees, they were engaged in a work that was imminently dangerous to the property of the plaintiff, and it is submitted on the part of this plaintiff that his right to recover certainly exists against both of said parties. Neither of them should be permitted to escape by pointing the accusing finger at the other."

Much more is said along this line, but the foregoing will suffice to show the trend of counsel's argument. True, counsel claimed the right to recover other grounds, in his brief; but because we could not sustain him in all of his claims certainly is no reason for denying all of them. As further proof of counsel's contentions, we refer to the fact that he, in support of his contentions, on page 29 of his brief, before referred to, cited some of the very authorities that we cited in the opinion in support of upholding the judgment against the city. Moreover, counsel for the city at the time of the trial proceeded upon this theory, as is disclosed by an instruction which they requested the court to give to the jury. In this request counsel, in substance, requested the court to charge that, unless the jury found that permitting the trees to stand with the roots cut "was the sole proximate cause of their falling upon plaintiff's house," or, further, that if the jury found "that in leaving the trees standing after cutting the roots the defendants could not, acting as prudent persons, have foreseen that the trees might fall on plaintiff's house," then the verdict should be for defendants. True, this request was refused, but it could have been refused upon

no other ground than that it was covered in the general charge. The court, in at least two of his instructions, had expressed the same thought in different language. Counsel for the city thus assumed notice to the city, and admitted liability if the jury found that it ought to have anticipated that the trees might fall with the roots cut. Counsel thus went further than we did, and, in view that they did so, it is too late now to complain. In view of the record therefore counsel's criticism that "the point which the court discovered, and upon which it affirmed the judgment against this defendant, was not truly a discovery, but a creation," etc., must be attributed to their zeal rather than to a desire to escape from the consequences of the contentions they advanced at the trial.

In view of the perplexing state of the record, we have no desire to disguise the fact that we had some difficulty to determine the principal theory upon which the case was tried, but we had no doubt that the theory which we followed was at least one of the different theories upon which the case proceeded to judgment. After a full consideration of the whole record, we became, and still are, convinced that we have no authority to reverse the judgment against the city upon the assignments presented, and for the reasons urged by its counsel. Even if the general principles of our jurisprudence did not suggest it, our own statute (section 3008, Comp. Laws 1907) constantly admonishes us that "the court must in every stage of an action disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the parties and no judgment shall be reversed or affected by reason of such error or defect." Again, in section 3285, it is provided that "no exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting." In our judgment no substantial rights of the defendant city were affected in the proceedings which resulted in a judgment against it. It is freely conceded that the record is not free from errors, nor are the instructions in all respects such as we should have suggested; but, for the reasons given, we are powerless to review the latter, and, as

to the former, they do not affect the substantial rights of the city.

The petition for a rehearing is therefore denied.

STRAUP, C. J., and McCARTY, J., concur.