## PANFIL v. CITY OF DETROIT.

1. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS MAY NOT BE COLLATERALLY ATTACKED.

    In a suit to set aside a special assessment on plaintiffs' lot incident to the opening and widening of a public street and to enjoin collection of the tax, the proceedings by which the land therefor was condemned may not be collaterally attacked.

2. MUNICIPAL CORPORATIONS—LOT NOT ADJOINING STREET NOT SUBJECT TO SPECIAL ASSESSMENT FOR STREET PURPOSES—DETROIT CHARTER.

    Where the city of Detroit condemned an entire city lot for street purposes, but used only part of it, leaving a strip of land between the street and the adjoining lot, the latter is not subject to assessment for paving or sidewalk purposes under the city charter (title 6, chap. 3, § 2), on the theory that it was adjacent to the street.

3. SAME—EVIDENCE HELD TO SHOW STRIP OWNED BY CITY NOT PART OF STREET.

    Evidence that the city assessed against itself a special assessment on a strip of land lying between the street and plaintiffs' adjoining lot and offered to sell said strip to them for the amount of said special assessment, *held*, convincing proof that the city did not consider said strip part of the street, notwithstanding it was secured by condemnation proceedings for street purposes.

4. TAXATION—REVIEW OF SPECIAL ASSESSMENT—ESTOPPEL—EQUITY.

    Where the owners of a city lot knew that the city owned a strip of land between their lot and the street, and that under the city charter their lot could not be legally assessed for pavement and sidewalk purposes, they were justified in relying thereon, and may not be denied equitable relief because they failed to apply to the board of assessors or to the common council for relief before final confirmation of the assessment roll.

On validity of assessment for public improvements which exceeds benefits, see annotation in 58 L. R. A. 363; 28 L. R. A. (N. S.) 1172, 1173.

5. SAME—FRAUDULENT ASSESSMENTS—EQUITY WILL RELIEVE FROM LEGAL FRAUD.

It is not necessary to find that assessing officers were guilty of actual bad faith and dishonesty in fixing special assessments for benefits incident to the opening of a public street, but it is sufficient to justify granting equitable relief if the manner of producing or attempting to produce the physical conditions which the officers thought would justify the assessments was such that it was in violation of law, and therefore constituted a fraud in law as against the plaintiffs.

6. SAME—EXCESSIVE ASSESSMENTS—INJUNCTION.

Where a special assessment against plaintiffs' lot for benefits did not conform to the requirements of the city charter and was not in proportion to the probable benefits, but was excessive, plaintiffs are entitled to enjoin the collection of the tax.

7. SAME—ASSESSMENT MUST BE LEVIED IN ACCORDANCE WITH DEFINITE PLAN—MUST BE JUST.

To be valid, a tax or special assessment should be levied in accordance with some definite plan designed to bring about a just distribution of the burden.

8. SAME—EQUITY WILL RELIEVE FROM ARBITRARY ASSESSMENTS RESULTING IN LEGAL FRAUD.

Where a city condemned the whole of certain lots for street purposes when only part was needed, leaving a strip between the street and adjoining lots, and, for assessment purposes, treated certain of said lots as adjacent to the street, while other lots in like situation were treated as not being adjacent to the street, the assessment was arbitrary and the result was a fraud in law, from which equity will afford relief to the injured party.

Appeal from Wayne; Dunham (Major L.), J., presiding. Submitted January 17, 1929. (Docket No. 167, Calendar No. 33,920.) Decided March 28, 1929.

Bill by Anthony C. Panfil and another against the city of Detroit to enjoin the collection of certain assessments. From a decree for plaintiffs, defendant appeals. Affirmed.

*Frank C. Cook* and *John P. O'Hara,* for plaintiffs.

*Walter Barlow* and *Arthur F. Lederle* (*Clarence E. Wilcox,* of counsel), for defendant.

NORTH, C. J.   In 1923 the plaintiffs owned and occupied as a residence in the city of Detroit certain property which will be referred to herein as lot 79 of Smart Farm subdivision.   Incident to the opening and widening of McGraw avenue, this lot, as a part of a special assessment district to which 60 per cent. of the cost of the improvement was apportioned by the common council, was assessed $1,440.   It was also assessed $1,781.72 for paving, and $198.28 for constructing a sidewalk on McGraw avenue.   The plaintiffs claim that these assessments so levied are illegal and excessive in amount, and that they have been imposed as the result of fraudulent conduct of the assessing officers.   By the bill filed herein, the plaintiffs ask to have these assessments set aside and their property relieved from the lien, and further, that the defendant city be restrained from enforcing collection.   The relief sought by the plaintiffs was decreed in the circuit.   The defendant has appealed.

Plaintiffs' lot fronts west 40 feet on Lonyo boulevard, which runs north and south.   McGraw avenue extends from Martin avenue on the east to Michigan avenue on the west, and crosses Lonyo boulevard at right angles.   Before the laying out of McGraw avenue plaintiffs' lot was bounded on the south by lot 78 of the same subdivision, which lot also faced 40 feet on Lonyo boulevard and extended back 150 feet, the same as plaintiffs' lot.   The general plan of McGraw avenue was to lay out a street 86 feet wide. If it had been laid out only 86 feet in width at the place in question it would have occupied approxi-

mately the southerly 32½ feet of lot 78. In other words, the north line of the street would not have been adjacent to plaintiffs' property but instead would have been substantially 7½ feet south thereof. Notwithstanding the city did not actually need the whole of lot 78 for the purpose of a street 86 feet in width, in the condemnation proceeding incident to laying out McGraw avenue the whole of lot 78 was taken. In some other instances where nearly the whole of a lot was needed for this improvement, the condemnation proceeding covered the entire lot. But for some reason not apparent in the record, in other cases only so much of the lot as was actually needed for an 86-foot street was taken, and a narrow strip of land extending the whole length of the lot would not be included. It is plaintiffs' claim that the defendant's purpose in taking the whole of lot 78 was that their lot 79 would thereby become a corner lot, and, being adjacent to the newly-established avenue, would be subject to a larger assessment for benefits, and would also be subject to assessment for the pavement and sidewalk on adjacent portions of McGraw avenue. The Detroit city charter (tit. 6, chap. 3, § 2) provides for assessing the cost of pavements (excepting intersections) and sidewalks against "abutting or adjacent" property according to frontage. Hence, if the city had not condemned the whole of lot 78 none of the cost of the pavement or sidewalk on McGraw avenue could have been assessed against the plaintiffs' lot 79. And, likewise, it is fairly indicated by this record that if plaintiffs' lot had not been made by this method to appear to be a corner lot with frontage on both Lonyo boulevard and McGraw avenue, the amount assessed against it for benefits incident to this improvement would have been less. Plaintiffs' case in part is based upon the claim that the defendant, in con-

demning the whole of lot 78 when the northerly 7½ feet thereof was not needed for street purposes, was prompted by its determination to subject their property to unlawful assessments, that the taking of the whole of lot 78 was excessive condemnation, and resulted in the perpetration of a fraud upon the plaintiffs, and that because of such fraud the assessments should be held to be invalid.

We are of the opinion that these plaintiffs cannot question in this suit the regularity of the condemnation proceeding through which the defendant became possessed of title to lot 78. The regularity of that proceeding is not subject to collateral attack in this suit. *Scotten* v. *City of Detroit,* 106 Mich. 564; *Doherty* v. *City of Detroit,* 244 Mich. 660. The material question here presented is, How much of lot 78 is actually included within the limits of McGraw avenue? It is true that the whole lot was condemned for street purposes. But if in fact the northerly 7½ feet of this lot is held by the city for other than street use, then plaintiffs' property is not adjacent to McGraw avenue and is not subject to the pavement or sidewalk assessment. This is the claim made in the plaintiffs' bill of complaint wherein it is alleged that the defendant's contention that the whole of lot 78 was taken for street purposes is untrue and amounts to a fraud upon these plaintiffs.

Nothing will be found in this record which tends in any manner to show there was ever any intention of actually constructing McGraw avenue more than 86 feet in width. The blue-prints prepared by the city incident to laying out this street indicate a width of 86 feet. The assistant city engineer, under whose supervision the work of opening and widening McGraw avenue was carried on, testified that the actual width of the street was to be 86 feet. Mr. Corcoran, who had charge of the special assessment

department of the city assessor's office, and who is charged with the duty of "calculating special assessments," testified that in his work he considered this northerly 7½ feet of lot 78 "only as a parkway." And he added: "There are thousands all over the city the same way." If this was city land held for park purposes between the plaintiffs' land and McGraw avenue, it was an intervening parcel and plaintiffs' property could not be held to be that of an adjoining owner, and, therefore, under the city charter, would not be subject to assessment for the paving or sidewalk constructed on McGraw avenue. *Jend* v. *City of Detroit,* 243 Mich. 108.

Bearing upon the controversy as to whether this northerly portion of lot 78 should be held to be a part of the street, we find in the record that, subsequent to the condemnation, and on July 20, 1926, the city council by resolution vacated this portion of the street "to become part and parcel of" plaintiffs' property provided the plaintiffs would pay the city therefor $455.40 within 60 days from the date of the resolution. In other words, upon plaintiffs' petition, the city offered to sell to them this northerly portion of lot 78 for $455.40. This proposed sale was not consummated.

The record also discloses that in spreading the special assessment upon the various parcels of property within the special assessment district created incident to the opening and widening of McGraw avenue, the city assessed the 7½-foot strip of land off of the northerly side of lot 78 to itself and fixed the amount of such special assessment that the city should pay at $456.92. This checks rather closely with the amount for which the city offered to sell the parcel to the plaintiffs, and is quite convincing that the city did not consider this northerly portion of lot 78 was a part of the street, notwithstanding it

was secured by condemnation for street purposes. Surely, if the city owned the property which was located between the plaintiffs' lot and McGraw avenue and held it for other than street use, the plaintiffs are not owners of "abutting or adjacent real estate," which, under the provisions of the Detroit city charter, is liable to assessment for a pavement or sidewalk constructed on McGraw avenue. Mr. Panfil testified he had been told of this provision in the city charter, and knowing that the north line of McGraw avenue as laid out was several feet south of his property, he rested in the assurance that his lot would not be assessed for pavement or sidewalk, and therefore did not apply to the board of assessors or to the common council for relief before final confirmation of the assessment roll. We think he was justified in so doing, and cannot be denied equitable relief on that account.

The remaining question is whether, under this record, the plaintiffs are entitled to equitable relief against the assessment of $1,440 for benefits incident to the opening of McGraw avenue. The Detroit charter provides that such cost and expense shall be "equitably assessed against the lots or parcels of real estate to be benefited thereby in proportion to the probable benefit to be derived therefrom." Detroit charter, tit. 6, chap. 3, § 1. Much testimony was taken on the question as to whether the assessments were apportioned at all on the basis of probable benefit. The amount of the assessment on each lot in the special assessment district is in evidence. We will not attempt to review the details, but suffice it to say that the amount assessed against plaintiffs' property was not at all in proportion to the probable benefits. While plaintiffs' lot was assessed $1,440, the lot of the same size and next northerly of plaintiffs' was assessed for benefits of the same nature

only $222.30. There are 13 lots in the assessment
district on the east side of Lonyo boulevard. The
average assessment per 40-foot lot is substantially
$460. The disparity can be accounted for only on
the theory that the assessing officers assumed that,
by the method hereinbefore indicated, plaintiffs'
property would be located on the corner adjacent to
McGraw avenue and would be thereby greatly en-
hanced in value for use as business property. In
fact, the property is not on the corner if the city see
fit to use the intervening strip of land as a park;
nor can plaintiffs' property be used for business
purposes, because it is subject to building restric-
tions which are being enforced and by their terms
will be operative until the year 1956.

It is not necessary to find the assessing officers
were guilty of actual bad faith and dishonesty in
fixing this assessment. But it is sufficient to justify
granting equitable relief if the manner of producing
or attempting to produce the physical conditions
which the officers thought would justify the assess-
ments was such that it was in violation of law and
therefore constituted a fraud in law as against these
plaintiffs. The assessment against plaintiffs' prop-
erty for benefits did not conform to the requirements
of the city charter. It was not in proportion to the
probable benefits but was so excessive as to justify
the intervention of equity.

To be valid, a tax or special assessment should be
levied in accordance with some definite plan de-
signed to bring about a just distribution of the bur-
den. *Thomas* v. *Gain,* 35 Mich. 155. In the instant
case, if we permit the defendant to take the whole
of certain lots when only part thereof is needed, and
thereby cause the adjacent lot to abut on McGraw
avenue and be subjected to special assessments,
while in other cases of like character the defendant

takes only the part of the lot actually needed for the street and the adjoining lot is thereby saved from the burden of special assessments, we allow the municipal authorities to arbitrarily determine which of such lots shall be made subject to special assessments for paving and sidewalk on McGraw avenue and which shall be exempt. Assessments thus imposed result in a denial of equal protection of the law. Plaintiffs' allegation that these special assessments against their lot were arbitrarily levied is sustained by the proof. *Hatch* v. *Railroad Co.,* 238 Mich. 381.

As above indicated, the McGraw avenue condemnation proceeding is not reviewable in this case, and it is not our purpose to hold that a municipality, in laying out or widening a street, is restricted to taking by condemnation a strip of land of uniform width, or that it does not have some reasonable discretion as to the amount of land necessary to be taken for public use.

"The condemnor is allowed a large discretion in determining the quantity necessary and the exercise of this discretion will not be interfered with except in the case of abuse." 4 McQuillin, Municipal Corp. (2d Ed.) § 1586.

What we do hold is that the municipality cannot take land not needed for street purposes and by this method arbitrarily subject certain properties to special assessments which otherwise could not be levied against them. Such an abuse of power is a fraud in law, and equity will afford relief to the injured party. *Hatch* v. *Railroad Co., supra.*

The decree of the lower court is affirmed, with costs to the appellees.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.