DAVIDSON v. SALT LAKE CITY et al.

No. 5237.   Decided December 29, 1932.   (17 P. [2d] 234.)

*W. W. Ritter,* of Salt Lake City, for appellant.

*Fisher Harris, W. A. Fraser,* and *Grant Macfarlane,* all of Salt Lake City, for respondents.

WORTHEN, District Judge.

Plaintiff brought this action to cancel, annul, and enjoin the collection of a special improvement tax. The action was tried by the court without a jury, and the court made findings of fact and conclusions of law and entered judgment in favor of the defendants dismissing the action. Plaintiff appeals.

The special improvement undertaken by the defendant city was the paving of University street to the extent of 20 feet of its width. University street runs north and south between Fourth and Fifth South streets, is west of University campus and east of Thirteenth East street. Prior to August 26, 1929, George B. Curley was the owner of a strip of land 5 feet wide and 132 feet in length, lying immediately west of University street and between said street and the plaintiff's property. On August 26, 1929, Mr. Curley and his wife conveyed this 5-foot strip of land to Salt Lake City by quitclaim deed. The deed recited: "The above described land is to be used by said city for street purposes."

Plaintiff's Exhibit C received in evidence consists of three documents, as follows:

"Sept. 12, 1929.

"Mr. P. J. Moran, Commissioner of Streets and Public Improvements, City.

"Dear Sir: I herewith submit a deed from George B. Curley and Mary J. Curley, his wife, for a strip of land in Lot 3, Block 17, Plat 'F', Salt Lake City Survey, to widen and straighten out University Street which runs through this Block. I recommend that the deed be approved and placed upon record.

"Yours very truly,

"F. S. Fernstrom, City Claim Agent.

"Mr. Moran moved that Report No. 10 from the City Claim Agent be filed, the deed accepted and placed of record in the office of the County Recorder, which motion carried, all members voting aye."

"Sept. 12, 1929.

"Mr. F. S. Fernstrom, City Claim Agent.

"Dear Sir: At a meeting of the Board of Commissioners held Sept. 12, 1929, your communication submitting a deed from George B. Curley and Mary J. Curley, his wife, for a strip of land in Lot 3, Block 17, Plat 'F', Salt Lake City, Survey, to widen and straighten out University Str., which runs through this block and recommending that the deed be approved and placed upon record, was taken up and filed, the deed approved and placed of record in the office of the County Recorder.

"Respectfully,

"Ethel MacDonald, City Recorder.

"Copy to Auditor,
"Streets, Eng.
"—2—Files."

"State of Utah, County of Salt Lake, ss.

"I, Ethel MacDonald, the duly appointed, qualified and acting City Recorder of Salt Lake City, Utah, do hereby certify that the attached and foregoing are full, true and correct copies of letter from the City Claim Agent submitting deed from George B. Curley and Mary J. Curley, his wife, for strip of land in Lot 3, Blk. 17, Plat 'F', Salt Lake City Survey, to widen and straighten out University Str., and action of the Board of commissioners in accepting deed and ordering same placed of record, also copy of letter from the Board of Commissioners to City Claim Agent dated Sept. 12, 1929, acknowledging receipt of his communication and setting out action thereon by the Board of Commissioners, as appears of record in my office.

"In witness whereof, I have hereunto set my hand and affixed the corporate seal of said city this 3d day of November, A. D. 1930.

"[Seal.]   Ethel Macdonald,
"City Recorder of Salt Lake City, Utah."

It is not in dispute but was found by the court that the said 5-foot strip is outside of the line of said west paved sidewalk, and said west sidewalk is east of said 5-foot strip and is a part of the 30-foot dedicated street heretofore referred to.

It is also established and found by the court that the conveyance to Salt Lake City of the said 5-foot strip did not straighten University street, but that the effect was to make a jog 5 feet deep for a distance of 132 feet, and, if said strip became a part of the street at all, its effect was to make University street crooked. It is further established by the evidence and found by the court that the board of commissioners of Salt Lake City would not pave University street unless and until the 5-foot strip was deeded to Salt Lake City. Plaintiff's Exhibit 1 admitted in evidence is as follows:

"July 8, 1929.

"Honorable J. P. Moran, Commissioner of Streets, and Public Improvements, City.

"Dear Sir: In the matter of petition by Frank S. Foreman, et al., asking that University Street between 4th and 5th South be paved and curbed and guttered, you are informed that the estimated cost of the City's portion is $715.50. Of the above amount $280.00 is for new watermain.

"Before this improvement is authorized the assessment for the narrow strip abutting on the west side of the street at 5th South should be disposed of, or the City will undoubtedly be required to buy the property for the levy. This may be handled in one of three ways:

"1. By the property owners depositing with the City Treasurer the estimated total assessment, or $528.00.

"2. By the owner of the strip dedicating it to the City for street purposes.

"3. By the owner transferring title and the property owner on the west accepting title to this property.

"I recommend that the petitioners be informed that the City will authorize the improvement as soon as the above matter is taken care of.

"Respectfully,
"HCJ:CF                                     City Engineer.

".........Nov. 18th 1930.

"This is a true copy of the carbon on file in the office of the City Engineer.

"H. C. Jessen, City Engineer."

Plaintiff has assigned many errors, but the question involved and which will dispose of the case is: Is the plaintiff

an abutting property owner on University street and liable for the tax imposed? If the defendant city, by receiving the deed from Mr. and Mrs. Curley to the strip 5 feet by 132 feet, made the strip a part of the street and constituted plaintiff an abutter thereon, then plaintiff cannot recover. On the other hand, if the plaintiff did not become an abutter on said street, he cannot be held for the tax and is entitled to the relief sought. At the outset, the defendant contends that section 682, Comp. Laws of Utah 1917, provides an exclusive remedy for plaintiff, and precludes him from obtaining the relief sought here. Section 682 reads as follows:

"682. *Errors not to avoid tax. Action to recover. Certain special taxes confirmed.* No such special tax shall be declared void, nor shall any such assessment or part thereof be set aside in consequence of any error or irregularity committed or appearing in any of the proceedings under this chapter; but any party feeling aggrieved by any such special tax, assessment, or proceeding may pay the said special taxes assessed or levied upon his property, or such instalments thereof as may be due, at any time before the same shall become delinquent, under protest, and with notice in writing to the city treasurer that he intends to sue to recover the same, which notice shall particularly state the alleged grievance and grounds thereof, whereupon such party shall have the right to bring civil action within sixty days thereafter, and not later, to recover so much of the special taxes paid as he shall show to be illegal, inequitable, and unjust, the cost to follow the judgment to be apportioned by the court as may seem proper, which remedy shall be exclusive. The city treasurer shall promptly report all such notices to the city council for such action as may be proper. No court shall entertain any complaint that the party was authorized to make, and did not make, to the city council sitting as a board of equalization, nor any complaint not specified in said notice fully enough to advise the city of the exact nature thereof; nor any complaint that does not go to the groundwork, equity, and justice of the tax. The burden of proof to show such tax or part thereof invalid, inequitable, or unjust shall rest upon the party who brings such suit."

The trial judge adopted the view that this case was controlled by section 682, and accordingly determined the matter in favor of the defendants. This court, in the case of

*Wey* v. *Salt Lake City*, 35 Utah 504, 101 P. 381, 382, in speaking of this section, says:

"This section of the statute refers and applies to the setting aside of an assessment 'in consequence of any error or irregularity committed or appearing in any of the proceedings.' It does not apply to a case where the property, as here, was not subject to, but was exempt from, the assessment."

In this case the plaintiff made no complaint to the city council sitting as a board of equalization, and if the assessment against his property as an alleged abutting owner was a mere error or irregularity, he has had his opportunity to be heard, and, having neglected to exercise his right, he cannot now complain. But it does seem to us that the studious efforts of the defendant city to make plaintiff an abutter was not a mere error or irregularity. The statute is specific as to the property subject to assessment, and any act or declaration on the part of the city commission attempting to subject property not liable therefor does not create a liability. Either plaintiff is an abutting owner for the purpose of making his property liable, or he is not such. The act of the defendant either made him such an abutter, or it failed to. If the taking of the deed was ineffectual to constitute plaintiff an abutting owner on University street, he had no legal liability to pay the tax, and the assessment was made against property exempt therefrom. Counsel for the defendant also insists that the city, under authority of Session Laws of Utah, 1921, chapter 15, amending section 674, Comp. Laws of Utah 1917, may levy and collect special taxes and assessments upon blocks, lots, or parts thereof and pieces of ground fronting or abutting or adjacent to the street or alley thus in whole or in part opened, widened, or improved, or which may be affected by or specially benefited by any of such improvements.

But it is a sufficient answer to defendant's contention that in this case the ordinance introduced in evidence as Plaintiff's Exhibit A specifically provides for assessing the property in "lots 3 and 6 of Block 17, Plat 'F,' Salt Lake City

Survey," abutting on both sides of University street from Fourth to Fifth South streets, in Salt Lake City, Utah, and the notice of intention, introduced in evidence as Plaintiff's Exhibit H., provides that the cost and expense of said improvements is to be assessed upon the lots and pieces of ground to be affected and benefited situated within block 17, plat F, Salt Lake City survey, fronting or abutting upon the street above named and to the entire depth back therefrom, and all within the district bounded on the north by Fourth South street, on the south by Fifth South street, on the east by University campus, and on the west by Thirteenth East street.

Plaintiff insists that under the established facts he is not an abutting owner on University street, but that the 5-foot strip deeded by *George B. Curley* and his wife to the defendant city is no part of the street, and is only a piece of land owned by the city lying between plaintiff's lot and University street.

"The propriety, advisability, necessity, extent, and character of public improvements is vested in the discretion of the municipal authorities and is not subject to judicial interference unless exercised capriciously, arbitrarily, oppressively, or fraudulently so as to result in an invasion of property rights. The law is well settled that where bad faith, fraud or corruption appear, or manifest oppression or gross abuse is shown, for example, unreasonable interference with private property rights, or where the action is unlawful in violation of mandatory legal provisions designed to safeguard private property rights, the power of the courts may be invoked by appropriate action."

The foregoing quotation is found in McQuillin Municipal Corporations (2d Ed.) Vol. V, § 2151.

This court, in *Morris* v. *Salt Lake City*, 35 Utah 474, 101 P. 373, 377, said:

"As a general statement therefore it may be said that the law authorizes the city authorities to exercise their own judgment in establishing street or sidewalk grades and in formulating plans for improvements of that or any other public character. It is also clear that the execution of the plans adopted may not be arrested or the plans reviewed by either a court or jury, unless it is made to appear

that they were conceived in bad faith, or that they are oppressive or clearly unreasonable, or are arbitrary, or capricious, or that their execution would inflict great and needless injury."

The undisputed evidence in this case establishes the fact that the 5-foot strip of ground is just running wild with weeds, and that absolutely nothing has been done with it since it was taken over by the city.

Mr. Arthur Walton, a witness called for the plaintiff, offered testimony which is undisputed to the effect that the 5-foot strip between Frank Davidson's lot and the sidewalk is just an empty piece of ground, and further,

"I have known about that strip ever since I put in my original petition in 1926. After I handed in my petition I met with the board of city commissioners at that time and they told us that was the reason they wouldn't pave it, because it could not be assessed."

In *People* v. *City of Los Angeles,* 62 Cal. App. 781, 218 P. 63, 66, the California court quotes the following from *Kansas City* v. *Hyde,* 196 Mo. 498, 96 S. W. 201, 7 L. R. A. (N. S.) 639, 113 Am. St. Rep. 766:

"But suppose the council, intending the condemnation to be really for the sole benefit of the individual, in order to give it validity, should say in the ordinance that the property was to be condemned for a public street; would such a false recital in the ordinance be conclusive? Would it put the man whose property was to be taken, and the people in the district who are to be taxed to pay for it, beyond the protection of the constitutional guaranty that their property should not be taken for private use? Could the city council, by a false recital in the ordinance, give it a validity which it would not have if it recited the truth? And when the city comes to ask the aid of the court to carry the ordinance into effect, is it possible that the court must be a mere tool to do the will of the council, with no power to inquire into the truth of the matter? What protection has a citizen for his constitutional rights if the courts cannot look through a sham and see the truth? And how can the courts learn the truth if they must take the recitals in the ordinance as conclusive and reject all evidence to show their untruth? What a reproach it would be to our system of jurisprudence and how humiliating would be the attitude of our courts if they were so powerless! But our law is not so lame, and our courts not so impotent."

Unless it can be successfully contended that a recital in a conveyance to the city that the same is made for street purposes is indisputable proof of the fact recited, it must be conceded that there is a question for judicial consideration. We are unable to subscribe to any such doctrine.

The case of *Panfil et al.* v. *City of Detroit*, 246 Mich. 149, 224 N. W. 616, 617, is cited. In that case the following facts appear: The city of Detroit proposed to open a street 86 feet wide. They condemned land for this purpose. Plaintiff owned lot 79, which faced Lonyo boulevard. Lot 78 bounded lot 79 on the south, and the new street intersected Lonyo boulevard at right angles. Had the street been laid out only 86 feet wide as planned, it would have occupied approximately the southerly 32½ feet of lot 78. In other words, the north line of the street would not have been adjacent to plaintiff's property, but, instead, would have been 7½ feet south thereof. Notwithstanding the city did not actually need the whole of lot 78 for the purpose of a street 86 feet in width, in the condemnation proceedings incident to laying out the street the whole of lot 78 was taken.

It was plaintiff's claim that the purpose of the city in taking the whole of lot 78 was to make plaintiff an abutter on the street and thereby subject him to the improvement tax. The Michigan court held that plaintiff was not an abutter on the street under the foregoing facts so as to make him liable for the improvement tax. In the course of its opinion the court said:

"The material question here presented is how much of lot 78 is actually included within the limits of McGraw avenue. It is true that the whole lot was condemned for street purposes. But, if in fact the northerly 7½ feet of this lot is held by the city for other than street use, then plaintiffs' property is not adjacent to McGraw avenue and is not subject to the pavement or sidewalk assessment. * * *

"It is not necessary to find the assessing officers were guilty of actual bad faith and dishonesty in fixing this assessment. But it is sufficient to justify granting equitable relief if the manner of producing or attempting to produce the physical conditions which the officers thought would justify the assessments was such that it was

in violation of law, and therefore constituted a fraud in law as against these plaintiffs. * * *

"As above indicated, the McGraw condemnation proceeding is not reviewable in this case, and it is not our purpose to hold that a municipality in laying out or widening a street, is restricted to taking by condemnation a strip of land of uniform width, or that it does not have some reasonable discretion as to the amount of land necessary to be taken for public use. * * *

"What we do hold is that the municipality cannot take land not needed for street purposes and by this method arbitrarily subject certain properties to special assessments which otherwise could not be levied against them. Such an abuse of power is a fraud in law, and equity will afford relief to the injured party."

The entire conduct of the city in respect to plaintiff's property bears every indication that the 5-foot strip was not taken in good faith for street purposes, but for the sole purpose of placing plaintiff's property with reference to the street so as to subject it to the tax. If the city can thus make the property owner 5 feet back from the street an abutter, it may likewise do so with one situated any distance from the street.

To see in the action of the defendant anything other than the real purpose would be to shut our eyes to the facts and to permit appellant's property to be taken by this artful method and without due process of law. We deem it unnecessary to send the case back for a new trial. We are, however, of the opinion that plaintiff is entitled to judgment. It is therefore ordered that the judgment of the lower court be reversed, and the case remanded to the district court, with directions that the lower court enter judgment in favor of the plaintiff canceling and annulling the special improvement tax imposed and enjoining its collection. Costs to appellant.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

FOLLAND, J., being disqualified, did not participate.