ARMSTRONG v. CITY OF DETROIT.

1. EMINENT DOMAIN—USE OF EXCESS LAND.

Title of land acquired by city in excess of amount presently needed for proposed street purposes, though acquired under color of use for street purposes, is treated as private property of the city which it may sell, rent or use as property not a part of the public street (Const. 1908, art. 13, § 5; 1 Comp. Laws 1929, §§ 3912–3914).

2. MUNICIPAL CORPORATIONS—STREET OPENING AND WIDENING—EX-
CESS LAND—ADJOINING PROPERTY.

   City which condemned an entire city lot for street purposes, but
   used only part of it, leaving a strip of land between street
   and plaintiff's adjoining lot, may not subject latter to assess-
   ment for opening and widening a street to which plaintiff's
   lot has no direct right of access.

Appeal from Wayne; Taylor (Mark D.), J., pre-
siding. Submitted October 4, 1938. (Docket No. 18,
Calendar No. 40,136). Decided November 10, 1938.

Assumpsit by James H. Armstrong against City
of Detroit to recover sums paid on special assess-
ment. Judgment for plaintiff. Defendant appeals.
Affirmed.

*Younglove & Chockley,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *Wal-
ter Barlow,* Chief Assistant Corporation Counsel,
for defendant.

POTTER, J. Plaintiff brought suit to recover the
amount of four instalments of a special assessment
alleged to have been illegally levied against his prop-
erty (lot 148 of J. W. Johnston's subdivision in the
city of Detroit), and interest thereon. From a judg-
ment for plaintiff, defendant appeals.

Defendant decided to build a crosstown thorough-
fare, known as Vernor highway, and where it crossed
Twenty-second street opened a new street for which
the city condemned many parcels of private prop-
erty, among them being lot 147 of Johnston's sub-
division, on the east side of Twenty-second street,
though only the southerly part of lot 147 was needed
and used for highway purposes. The northerly part
of said lot, a strip 3.4 feet on Twenty-second street
and 2.65 feet on the alley, extending the length of the
lot, abutting upon the highway and lying between lot

148 and the north line of Vernor highway was not used for street purposes. Lots 149, 150 and 151 north of plaintiff's lot front on Twenty-second street, as does lot 148. Such lots are about the same size, shape and character as lot 148, except that lot 151 is on the corner of Johnston street to the north.

Plaintiff's lot, 148, was assessed $1,300.08 for paving, $878.76 for opening and widening, and $123.16 for sidewalks, on the theory it abutted Vernor Highway and was a corner lot fronting on a business street. Lot 147 was not assessed at all, and lots 149, 150 and 151 were assessed as a unit $286.92 ($95.64 each) for opening and widening, and nothing for paving or sidewalk.

The city refunded the amount paid for sidewalk assessment, and plaintiff seeks to recover $723.55, the amount of parts 3, 4, 5 and 6 of the special assessment for opening and widening which he paid May 3, 1932, together with interest of $137.71, which the common council upon plaintiff's petition refused to refund.

At the time the assessments were made, Mr. Burr was the owner of lot 148 and had mortgaged it to plaintiff to raise the money required to pay such assessments. Burr paid instalments 1 and 2 of the assessment for opening and widening. Plaintiff made the payment above mentioned as having been made by him when he foreclosed his mortgage on lot 148. Upon the sale of the property on foreclosure, plaintiff bid it in for the amount due him, plus the sum of $723.55 paid to relieve the property of the opening and widening assessment. Title to lot 148 became absolute in plaintiff August 5, 1933.

Plaintiff presented a claim to the common council for refund of these instalments of the assessment for opening and widening upon the ground that such special assessment against his property was invalid.

The council refused to grant relief. He instituted suit, claiming the assessment was fraudulent, illegal and void for the reason his property was excessively and fraudulently assessed, and "that the fraud on the part of the officers and agents of the city of Detroit consisted in condemning an excessive amount of land not needed for the opening and widening of Vernor highway west in order to create an artificial and fictitious 'business corner' basis of assessing lot No. 148; in considering and assessing said lot No. 148 as a corner lot when it was not in fact on a corner; in considering and assessing said lot No. 148 as abutting on Vernor highway west when it did not in fact abut or adjoin said Vernor highway at any point; in considering and assessing said lot No. 148 as business property when it is not adaptable, salable, or usable as business property, because it has no direct access to Vernor highway, being shut off therefrom by the intervening land privately owned by the defendant; in considering and assessing said lot No. 148 on an entirely different basis from other and adjoining property similarly situated on Twenty-second street; in failing to assess the adjoining land on lot No. 147, which was in fact the corner lot abutting on Vernor highway; in assessing lot No. 148 more than nine times as much as was assessed to lot No. 149, which adjoins plaintiff's lot No. 148, is the same size, is similarly situated, and derives the same benefits as lot No. 148."

The city was not limited to the acquisition of land to be covered by the proposed improvement, but was authorized to condemn property in excess of what was to be presently used. Both the Constitution [*] and the statutes [†] contemplate this surplus land,

---

[*] See Const. 1908, art. 13, § 5.—Reporter.

[†] See 1 Comp. Laws 1929, §§ 3912–3914 (Stat. Ann. §§ 8.211–8.213).—Reporter.

though acquired under the color of use for street purposes, is to be treated as private property of the city, because it may be leased or sold with or without restrictions by the city. It is in the nature of private property acquired by the city, abutting the street, rather than a part of the street. *Emmons* v. *City of Detroit,* 255 Mich. 558, 261 Mich. 455. Plaintiff's lot does not abut Vernor highway. The city may sell the excess strip, rent it, or use it as property not a part of the public street. Plaintiff has no right of access across it from his lot to the street as established and improved. *Linski* v. *City of Detroit,* 260 Mich. 385.

The trial court in disposing of the case said:

"Plaintiff relies on the case of *Panfil* v. *Detroit,* 246 Mich. 149, as being a case with parallel facts.

"In the *Panfil Case* a strip of land approximately 7½ feet in width separated the plaintiff's property from the street. In the instant case the strip is approximately 3 feet in width.

"It appears to this court to be immaterial whether the strip of land in question is 7½ feet or 3 feet in width. The rule of law would be the same. And on that theory plaintiff should recover.

"The defendant city has plaintiff's money and should not be allowed to retain possession of the same on the theory that plaintiff regained the sum through mortgage foreclosure. The fact remains that the city has in its possession the money to which it has no legal claim."

We think the trial court arrived at a correct conclusion and judgment is affirmed, with costs.

WIEST, C. J., and BUSHNELL, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., did not sit.