authority or contractual obligation, is not liable for interest.

Counsel for plaintiff have cited a number of cases in which interest at 5% was allowed upon judgments of this sort against school boards. However, in none of these opinions was the question of interest discussed.

 Plaintiff's counsel has also cited numerous cases holding, correctly so, that the general rule that a state agency is immune from being cast for interest is not applicable to liability arising from the exercise of a right of eminent domain or for damages to private property incurred in the prosecution of public works, on the theory that to hold otherwise would be a violation, at least, of the spirit of the constitutional guarantee that private property shall not be taken for public purposes, etc., without just and adequate compensation. This principle has also been recognized by the federal courts.

In Dillion, Municipal Corporations, 5th Ed., Vol. II, Sec. 867, the general rule is stated that a State is not liable for interest on its debts "unless its consent thereto has been given by statute or express stipulation * * *." The well-settled rule of liability for interest by counties and similar State agencies is given as follows: "On the liability of counties, towns, cities, and other municipal organizations for interest on debts owing by them a divergence of opinion has arisen. Thus, in some jurisdictions, counties are regarded as instru-mentalities of the sovereign State, organized to promote the general welfare, and consequently cannot be made to pay interest on corporate debts in the absence of a statute or express stipulation therefor in a lawful contract."

The judgment appealed from is amended by striking therefrom the words "with 5% per annum interest thereon from date of September 1, 1941 until paid." The right is reserved to apply for a rehearing on the matter covered by this decree.

PONDER, J., recused.

27 So.2d 314

**TOWN OF DE QUINCY v. WOOD.**

No. 37644.

March 18, 1946.

Rehearing Denied June 14, 1946.

M. R. Stewart, of Lake Charles, and Gill & Simon, of New Orleans, for defendant-appellant.

S. W. Plauche, Jr., and Plauche & Plauche, all of Lake Charles, for plaintiff and appellee.

O'NEILL, Chief Justice.

The defendant is appealing from a judgment enforcing a local assessment of a town lot by the Town of DeQuincy for the paving of a street and its sidewalks.

The paving was done under authority of Act No. 92 of 1934, which authorizes municipal corporations to construct, pave and surface, or otherwise improve, streets, roads, sidewalks and alleys, or any part thereof, and to pay for the work by levying and collecting a local or special assessment according to the front-foot rule, on each lot or tract of land abutting the street, road, sidewalk or alley to be improved. The Mayor and Board of Aldermen, being the governing authority, of the Town of DeQuincy, paved a number of streets and sidewalks in the town, including Yoakum Avenue, on the south side of which the defendant's lot, being Lot 12 of Block 2 of the Frisco Addition to the Town of DeQuincy, has a frontage of 150 feet. The cost of paving Yoakum Avenue and its sidewalks averaged $1.80 per foot of the frontage of all of the property abutting the avenue. The assessment of the defendant's lot therefore amounted to $270.

The appeal comes to this court under the provision in the fifth paragraph of Section 10 of Article VII of the Constitution that the Supreme Court "shall have appellate jurisdiction in all cases wherein the constitutionality or legality of any tax, local improvement assessment, * * * levied by the State, or by any * * * municipality, * * * is contested, * * * whatever may be the amount thereof." The legality of a tax or local improvement assessment levied by a municipality is in contest, in the meaning of the fifth paragraph of Section 10 of Article VII of the Constitution, when the question is whether the tax or local improvement assessment, as levied by the municipality, was authorized by the statute, and when the determination of that question requires an interpretation of the statute. Adler, Goldman & Co. v. Board of Assessors, 37 La. Ann. 507; State ex rel. Scheff v. Cullom, 49 La.Ann. 1744, 23 So. 253; Roy v. Schuff, 51 La.Ann. 86, 24 So. 788; State v. Rosenstream, 52 La.Ann. 2126, 28 So. 294, citing City of New Orleans v. Clark & Meader, 42 La.Ann. 9, 7 So. 58; Kelly v. Chadwick, 104 La. 719, 29 So. 295; Chadwick v. Kelly, 187 U.S. 540, 23 S.Ct. 175, 47 L.Ed. 293; Moody & Co. v. Spotorno, 112 La. 1008, 36 So. 836; Town of

Minden v. Stewart, 142 La. 467, 77 So. 118. ·

The rule for determining, in any given case, whether this court has jurisdiction on the ground that the constitutionality or legality of a tax is in contest, is the same in cases where the tax is levied directly by the State, by an act of the Legislature, as in cases where the tax is levied by a municipal ordinance under authority of an act of the Legislature. If the issue is such that a judicial interpretation of the tax statute is necessary to determine whether the defendant owes the tax, the constitutionality or legality of the tax is in contest and the supreme court alone has appellate jurisdiction. State v. Rosenstream, Weiss & Co., 52 La.Ann. 2126, 28 So. 294; State v. Orfila, 116 La. 972, 41 So. 227; State v. Wenar, 118 La. 141, 42 So. 726; Downs, Tax Collector, v. Dunn, 162 La. 747, 111 So. 82.; State v. Cedar Grove Refining Co., 178 La. 810, 152 So. 531; State v. Whitehead Motor Co., 179 La. 710, 154 So. 912; State ex rel. Grosjean, Supervisor, v. Standard Oil Co. of La., 182 La. 577, 162 So. 185. In the latter case the court quoted with approval from the Cedar Grove Refining Company's case this:

"It is well settled that, in a suit to collect a tax, if the defense be such that a *judicial interpretation* of the tax statute is necessary to determine whether the tax demanded is levied upon the defendant, the legality of the tax is in contest, and *the Supreme Court has* appellate jurisdiction. Downs, Tax Collector, v. Dunn, 162 La. 747, 111 So. 82." [178 La. 810, 152 So. 533.]

There is no question of fact in this case, nor question of regularity of the proceedings had by the municipal authorities in levying the local improvement assessment. The only defense made in answer to the suit is the complaint that, although the defendant's lot abuts the avenue as dedicated, the lot does not abut that part of the avenue or sidewalk that is covered by the concrete pavement. The municipal authorities did not pave the avenue to the extent of its entire width, but left unpaved a grass-grown strip of land, 15 feet 9 inches wide, between the concrete pavement on the sidewalk and the private property line of all of the lots abutting on both sides of the avenue. The defendant therefore contends that his lot does not abut Yoakum Avenue, in the meaning of the statute, but abuts this vacant strip of land, 15 feet 9 inches wide, between his property line and the edge of the concrete pavement. He contends that, as this 15-foot-9-inch strip of land belongs to the town and abuts the concrete pavement, the town should bear the cost of paving the avenue.

Yoakum Avenue, as dedicated for a public street, is 70 feet wide and is near the outskirts of the town. It is the widest street in the town and wider than the traffic requires. The Mayor and Board of Alder-

men, therefore, after due consideration, and after calling and holding a public meeting on the subject, decided that there was no good reason why the owners of the lots along the avenue should have to pay for paving the roadway for its entire width. The paving was part of a comprehensive program for the paving of a number of streets and sidewalks in DeQuincy. The Mayor and Board of Aldermen decided that the pavement on Yoakum Avenue should be only 27 feet wide, from curb to curb, and that the concrete pavement on the sidewalk should be 4 feet wide. These widths were adopted by the Mayor and Board of Aldermen as being all that the traffic on the avenue called for, and as being therefore a matter of economy for the owners of the property abutting the avenue, in comparison with the paving of the whole 70 feet of width of the avenue. There is nothing extraordinary in the widths which were adopted by the municipal authorities, as far as we see. For the paved roadway, or space for vehicle traffic, 27 feet from curb to curb seems wide enough. The concrete surface on each sidewalk being 4 feet wide, the edge nearest the curb being 21 inches from the curb, puts the other edge of the sidewalk pavement 15 feet 9 inches from the property line. The total distance therefore from the curb to the property line, on each side of the 27-foot paved roadway, is 21 feet 6 inches. The 15-foot-9-inch grass-grown strip of land, between the edge of the concrete pavement on the sidewalk and the property line, is not all waste space, be-

cause it is customary in the residential districts of all municipalities to leave some grass-grown space between the concrete pavement on the sidewalk and the property line.

The only question in this case is a matter of interpretation of the statute under authority of which the street paving was done, namely, Act No. 92 of 1934. Section 6 of the act provides that, in proceedings such as this, the governing authority of the municipality shall adopt an ordinance levying the local or special assessment, according to the front-foot rule, on each lot or parcel of real estate "abutting the street." There is nothing doubtful in the term "abutting the street." It means abutting the street as dedicated for the purpose of a street. It does not mean abutting that part of the street which the pavement actually covers, where the pavement does not extend to the edge of the street. There would be no ground for argument about this, but for the fact that in the title and in the first section of the statute the abutting property, on which the municipal authorities are authorized to levy and collect the local or special assessment, is referred to as "the real property abutting such improvements." If we should give that expression a literal construction it would mean that a lot "abutting the street," as stated in section 6, and on which the municipal authorities are authorized to levy the local or special assessment, must abut not the street, as dedicated, but the improvement itself. To

construe the statute as meaning that a lot must actually abut or .adjoin the pavement or other improvement of the street or sidewalk in order to be subject to the local or special assessment for street improvement would be contrary not only to section 6 of the statute but also to the concluding sentence in section 17, which provides: "This Act shall be liberally construed to promote the purposes for which it is enacted."

 In this instance the interpretation asked for by the defendant would have forbidden the municipal authorities to pave Yoakum Avenue otherwise than for its entire width of 70 feet, including the concrete pavement on the sidewalks. And such a construction would abolish the discretion which is allowed to municipal authorities, as expressed in the title and in the first section of the act, to pave or otherwise improve streets and sidewalks "or any part thereof." Our opinion therefore is that the provision in section 6 of the statute, authorizing the levying of the assessment on lots abutting the street, must prevail, if there is a conflict between that provision and the provision in the title and in the first section of the statute, referring to the abutting lots as "abutting such improvements". The construction which we adopt is that which prevails in other jurisdictions with reference to similar statutes. See Vol. 1 Words and Phrases, Perm.Ed., "Abut; Abutting." Among the cases listed, the most appropriate expression is in City of

Joplin ex rel. v. Freeman, 125 Mo.App. 717, loc.cit. 723, 103 S.W. 130, loc.cit. 132, where it is said:

"The contention of the defendant is that his lots did not abut upon the sidewalk as constructed. The ordinance of the city authorized the council to levy a special assessment upon lots abutting on such sidewalk. Witnesses stated that there was a space of about a foot between defendant's property line and the sidewalk as constructed. If such was the fact, it would not have the effect of invalidating the tax bills. It is true that the word 'abuts' literally means that the lines of the property owner's lot and the sidewalk should meet or come together. But the ordinance is not to be construed literally. It appears that the walk was constructed upon the sidewalk space which abutted defendant's lots. The city was not required to utilize all such space in laying its sidewalks. The object of the law was to tax the property owner for street improvements upon which his property abutted. We hold that, where it is shown that the sidewalk is constructed upon the space reserved for that purpose and the property owner's lot abuts upon such space, the law has been substantially complied with."

From City of Cincinnati v. Batsche, 52 Ohio St. 324, 40 N.E. 21, 27 L.R.A. 536, we quote:

"Where a strip of ground from one side of a street is appropriated for the purpose

of widening such street, the lots and lands fronting on the opposite side of the street, at the part widened, will be held to abut on the improvement, although the street may intervene between the abutting lots and lands and the strip of ground appropriated."

The defendant in this case relies upon Jacob v. Mayor and Board of Trustees of City of New Iberia, 163 La. 416, 112 So. 30. In that case the part of a street which was left unpaved by the municipal authorities, between the street which was paved and Jacob's property line, was not a part of the street that was paved, but was a triangular space, described in the opinion as a "park or plaza." It appears that the space was taken from another street into which the improved street entered at an angle. The judge of the district court held that the intervening of that unpaved triangle between the paved street and Jacob's property line prevented his lot from abutting the improved street; and this court, deferring to the more intimate knowledge which the judge of the district court had of the location and the nature of the so-called park or plaza, affirmed his judgment. The striking difference between this case and that case is that in this case the only intervening space between the pavement on the improved street and the defendant's property line is a part of the improved street itself.

The Town of DeQuincy filed a plea of estoppel in this court, pleading that the defendant by failing to make any objection to

the paving of Yoakum Avenue in the way in which it was paved, until the work was completed under the contract and accepted by the municipality, was estopped to complain of the assessment of his lot for its proportion of the cost of the work. The conclusion which we have come to on the merits of the case renders it unnecessary to consider the plea of estoppel.

The judgment rendered by the district court in this case is a personal judgment instead of being only a judgment in rem. In that respect the Town of DeQuincy concedes that the judgment should be amended. Although the town, in its petition in the district court, prayed only for a judgment in rem, and not for a judgment in personam, our opinion is that the town should pay the cost of this appeal, for failing to have the judgment corrected in the district court before the defendant appealed from it.

The judgment appealed from is amended by converting it into a judgment in rem, exigible only against Lot 12 of Block 2 of the Frisco Addition to the Town of DeQuincy. As thus amended the judgment is affirmed. The Town of DeQuincy is to pay the costs of appeal and the defendant all other costs of court.

PONDER and HAMITER, JJ., dissent.

HAMITER, Justice (dissenting).

Dedicated for the purpose of creating Yoakum Avenue in the Town of DeQuincy

was a strip of ground seventy feet wide. The governing authority of the municipality, however, as was its privilege, did not utilize that entire width in constructing Yoakum Avenue's paved roadway, curbing, guttering, and sidewalks, all of which are considered to be parts of the street. Rather the street as it was actually improved, being that which is situated between the outer edges of the two sidewalks, measures only thirty-eight feet six inches. Thus there remains unused and unimproved thirty-one feet six inches of the dedicated land, one-half of which, or fifteen feet nine inches, lies on each side of the completed street between the outer edge of the sidewalk and the property line. The Town of DeQuincy does not contemplate the improving of these fifteen feet nine inch strips for street purposes at any time in the future, this being indicated by the record and by the argument of counsel representing the municipality.

The paving of the street in question (including the roadway, sidewalks, etc.) was performed under the authority of Act No. 92 of 1934. According to the title and Section 1 of that statute, the municipality is authorized "to levy and collect local or special assessments on the real property *abutting such improvements,* sufficient in amount, to defray the total cost of said works * * *." Section 6 provides that the governing authority "shall adopt an ordinance levying a local or special assessment on each lot or parcel of real estate *abutting the street, road, sidewalk or alley*

*to be improved* '* * *." On giving these provisions a liberal construction, as must be done (Section 17), it is clear to my mind that the Legislature intended the assessment to affect only property that actually abuts or adjoins the land on which the municipality has placed, or seriously contemplates placing, the street paving improvements (roadway, sidewalks, etc.). In the instant case, as above pointed out, the Town of DeQuincy never expects to pave the fifteen feet nine inches of ground lying between the outer edge of the completed street (the outer edge of the sidewalk) and defendant's present property line. Therefore, in my opinion, until that unused portion of ground is released by the municipality from the dedication, defendant's real estate (assuming that the fifteen feet nine inches of land will become part thereof on its abandonment) cannot be considered, under the language of Section 6 of the statute, as "abutting the street, road, sidewalk or alley to be improved," and is not liable for the assessment.

I do not agree with the observation made in the majority opinion that the phrase "abutting the street" used in the statute means abutting the street as dedicated for the purpose of a street. Such a construction, I think, is entirely too broad. Suppose certain landowners decide to create a new residential subdivision within a municipality, and in subdividing their property and in preparing an official plat they make formal dedication for the principal thoroughfare therein of a strip of ground

one hundred fifty feet wide. Later, the governing authority of the town approves and provides a paved street (roadway, curbing, sidewalks, etc.) only thirty-eight feet in width (considering it to be sufficient for all times), thus leaving unimproved one hundred twelve feet of the dedicated land, one-half of which or fifty-six feet lies on each side of the improvements or between the outer edge of the sidewalk and the property line. Can it be correctly said, in this situation, that the real estate located beyond this fifty-six feet of unused ground "abuts such improvements"? Clearly it can not. To abut, according to Webster's New International Dictionary, means "to touch, as contiguous estates, along a border or with a projecting part."

The majority opinion states that it is customary in residential districts of all municipalities, and particularly of the small towns like DeQuincy, to leave some space between the paved sidewalk and the property line. I seriously doubt the correctness of this statement. Nothing in the record sustains it; no citations are given in aid of it; and I have no personal knowledge of a custom of that kind.

The majority opinion further states: "The construction which we adopt is that which prevails in other jurisdictions with reference to similar statutes." In support of this statement, there is cited Vol. 1, Words and Phrases, Perm. Ed., "Abut, Abutting," as well as the cases listed therein of City of Joplin ex rel. v. Freeman, 1907, 125 Mo.App. 717, 103 S.W. 130 and City of Cincinnati v. Batsche, 1895, 52 Ohio St. 324, 40 N.E. 21, 27 L.R.A. 536.

The City of Joplin case involved an assessment made for sidewalk paving. The law authorized the City Council to levy a special assessment upon lots abutting on the sidewalks. Defendant contended that his lots did not abut upon the sidewalk as constructed, because a space of about one foot (not fifteen feet nine inches as in the instant case) intervened between it and his property line. The court held that "the law [has been] substantially complied with."

The City of Cincinnati case is clearly inapplicable to this controversy. In it the court simply held that where a strip of ground from one side of a street is appropriated for the purpose of widening such street, the lots and land fronting on the opposite side of the street at the part widened are considered as abutting on the improvement. The case did not involve, as does the instant matter, an unsued portion of ground lying between the sidewalk and the property line.

Pertinent here are Panfil v. City of Detroit, 1929, 246 Mich. 149, 224 N.W. 616, and Davidson v. Salt Lake City, 1932, 81 Utah 203, 17 P.2d 234, neither of which is cited in the majority opinion. In the former the City of Detroit condemned certain property for street purposes, but it did not need the entire width so taken. After

the completion of the improvements (paved roadway and sidewalks) there remained unused between the sidewalk and plaintiff's property line a strip of land seven and one-half feet wide. With reference to this intervening ground the court commented [246 Mich. 149, 224 N.W. 617]:

"* · * * The material question here presented is how much of lot 78 is actually included within the limits of McGraw avenue. It is true that the whole lot was condemned for street purposes. But, if in fact the northerly 7½ feet of this lot is held by the city for other than street use, then plaintiffs' property is not adjacent to McGraw avenue and is not subject to the pavement or sidewalk assessment. * * *

"If this was city land held for park purposes between the plaintiffs' land and McGraw avenue, it was an intervening parcel, and plaintiffs' property could not be held to be that of an adjoining owner, and therefore under the city charter would not be subject to assessment for the paving or sidewalk constructed on McGraw avenue. Jend v. City of Detroit, 243 Mich. 108, 219 N.W. 620.

"* * * Surely if the city owned the property which was located between the plaintiffs' lot and McGraw avenue and held it for other than street use, the plaintiffs are not owners of 'abutting. or adjacent real estate,' which under the provisions of the Detroit City Charter is liable to assessment for a pavement or sidewalk constructed on McGraw avenue."

In Davidson v. Salt Lake City [81 Utah 203, 17 P.2d 235], the defendant, in connection with its undertaking to improve University Street, acquired a five foot strip of land lying between plaintiff's property and that street. The deed recited: "The above described land is to be used by said city for street purposes." Notwithstanding this provision of the deed, the strip was not used for street purposes, and, as a consequence, it was held that plaintiff's property did not abut University Street. The court observed:

"* * * If the city can thus make the property owner 5 feet back from the street an abutter, it may likewise do so with one situated any distance from the street."

Of some importance here is the decision in Jacob v. Mayor and Board of Trustees of City of New Iberia, 163 La. 416, 112 So. 30, which the majority opinion seeks to distinguish from this case. The property of the plaintiff therein had a frontage originally on Duperier Street of one hundred seventy-five feet. When paved, however, that street was curved away from plaintiff's property, and there remained in the old street an unimproved plot triangular in shape. As disclosed by the record of that proceeding, especially the maps therein, the intervening triangular plot resulted in a part of plaintiff's property being situated away from the paved roadway various distances ranging from about thirty-five feet, at the farthest point, to less than five

feet. In seeking to enforce collection of the assessment for the new paving levied against the plaintiff's property, the city contended, just as the Town of DeQuincy urges with respect to the instant property, "that the triangle constitutes a neutral ground merely, and that to all intents and purposes plaintiff's property actually fronts upon the paved roadway." But this court, ruling in favor of the property owner and holding that the intervening triangular plot prevented his land from abutting the paving, answered the contention as follows:

"We are unable to hold that the strip in question constitutes a neutral ground. It is, undoubtedly, the property of the city, which may use or dispose of it in any lawful manner it sees fit. It has had the effect of depriving the greater portion of plaintiff's property of a frontage on the street, thereby making ingress and egress more difficult. It injures rather than benefits the property of plaintiff.

"The judge of the district court is familiar with the locality and the conditions. With full knowledge of all the facts and circumstances of the case, he has relieved plaintiff from paying for the pavement in front of the triangular portion of ground belonging to the defendant municipality. From our examination of the record, we are unable to hold that he erred in so doing."

If, according to the majority holding herein, the land in question located fifteen feet nine inches from the sidewalk (improved street) is to be treated as property "abutting such improvements," why would not land situated twenty-five feet away be treated likewise? Or thirty-five feet? or fifty feet? Or one hundred feet? At what distance does it cease to be abutting property?

One of the basic reasons for making the abutting property liable for the paving of streets and sidewalks is that it is benefitted and its value enhanced by the improvements. In this case, however, defendant's property could well be materially damaged by the fifteen feet nine inches of ground (owned by the Town of DeQuincy) lying between it and the sidewalk. Over this strip, supervised by the municipality, he is required to maintain suitable means of ingress and egress. The accomplishment of this, should the governing authority of the town not cooperate fully with him, might be a difficult and expensive operation. Moreover, defendant's property would materially diminish in value if the town refrains from keeping this comparatively large strip clear of weeds, trash, stagnant water, etc., an obligation not imposed on it by the street dedication.

For these reasons I am of the opinion that defendant's property does not presently abut the improvements made by the Town of DeQuincy and it cannot be held liable for the paving assessment until and unless the fifteen feet nine inches of

by the Town of DeQuincy or otherwise, a ground becomes, through an abandonment part and parcel of it.